1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  KEVIN FIELDS,                                    CASE NO. 1:03-CV-6364-OWW DLB-P

10                        Plaintiff,                FINDINGS AND RECOMMENDATIONS
                                                    RECOMMENDING DEFENDANT'S MOTION
11         v.                                       FOR SUMMARY JUDGMENT BE DENIED IN
                                                    PART
12  RUIZ, et.al.,
                                                    (Doc. 144)
13                        Defendant.
                                          /         OBJECTIONS DUE JULY 25, 2007
14  _____

15  I.     Defendant's Motion for Summary Judgment

16         A.     Procedural History

17         Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights

18  action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's second amended

19  complaint, filed February 9, 2004, against defendants Robertson, Ruiz, Wilbur, Canfield,

20  Fuhlrodt, Rabe and Dill.  ("defendants") for violation of the Eighth Amendment based on the

21  conditions of his cell and for retaliation.  On April 11, 2007, plaintiff filed a motion for an order

22  dismissing defendants Robertson and Dill.  This request will be granted.

23         On December 21, 2006, defendants filed a motion for summary judgment.  Plaintiff filed

24  an opposition on April 16, 2007.[1]  Defendants did not reply.

25         B.     Legal Standard

26         Summary judgment is appropriate when it is demonstrated that there exists no genuine

27  _____

28         [1]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
    court in an order filed on June 21, 2004.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

2  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

satisfied."  Id. at 323.

    If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the denials of its

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of the suit under the governing

law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific

Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

     C.    <u>Discussion</u>

        1.    <u>Plaintiff's Allegations</u>

In his second amended complaint, plaintiff alleges that defendants violated his rights under the Eight Amendment by leaving him a cell with an overflowing toilet for 28 days. Plaintiff also alleges that defendants Ruiz, Wilbur, Canfield and Fuhlrodt retaliated against him for filing a grievance by serving him disproportionately small servings at dinner.

3

1        2.      Defendants' Undisputed Facts[2]

2    **A.    Background**

3        1.      Plaintiff is properly in the custody of the California Department of

4  Corrections and Rehabilitation (CDCR) pursuant to a valid judgment in the San Joaquin County

5  Court in which he was convicted of assault with a deadly weapon with force likely to cause great

6  bodily injury, plus enhancements, and sentenced to a term of 25 years to life.  Defendants'

7  Exhibit A, Attachment 1, p.2-3.  Plaintiff was housed in the Security Housing Unit (SHU) at

8  California State Prison - Corcoran (CSP-Cor) at times material to the matters at issue.  DX A-1,

9  p.5.

10        2.      Defendant Dill was a Facility Captain; defendant Rabe was a Facility

11  Lieutenant, defendant Fuhlrodt was a Correctional Sergeant and defendants Ruiz, Wilbur and

12  Canfield were Correctional Officers at CSP-Cor at times material to the matters at issue.  Compl.

13  p.2-4; ¶¶ 5-11.

14        3.      Fields was received by CDCR on June 26, 2000, and housed at the Deuel

15  Vocational Institution (DVI).  DX A-1, p.6.  Fields was placed in administrative segregation on

16  July 12, 2000.  DX A-1, p.7-41.

17        4.      Fields was transferred to the SHU at CSP Corcoran on December 1, 2000.

18  DX A-1, p.5.

19        5.      Assignment to the SHU is not based on the inmates' underlying offense,

20  but rather, the SHU is an administrative means of managing inmates who commit serious

21  disciplinary infractions once in prison, or who become affiliated with a prison gang.   DX B, Cal.

22  Code Regs. § 3341.5, subd.(c).  Thus, the SHU provides secure housing for inmates whose

23  conduct endangers the safety of others or the security of the institution.  *Id.*

24        6.      The SHU is designed to maximize control of inmates who pose a definite

25

26        [2] Plaintiff did not file a separate statement of disputed facts.  The Undisputed Facts are taken from
27  Defendants' Statement of Undisputed Facts and Plaintiff's Opposition to Defendants' Motion for Summary
    Judgment.

28

4

and serious threat to the safety of others or themselves, and therefore, conditions inside the SHU are more restrictive than the conditions in general population and administrative segregation. DX B.

7.     The SHU provides physical controls to prevent disorder, provide protections for others, and prevent criminal activities. *Id.*

8.     Being housed in the more restrictive SHU, Fields initially remained virtually disciplinary free.  42-47.  A chrono authored December 21, 2001, shows that Fields had remained disciplinary free for one year.  DX A-1, p.42.

9.     On April 17, 2002, Fields did not want to have a cell partner, and threatened to kill anyone that was assigned to his cell.  DX A-1, p. 49-54.

10.     On May 27, 2002, Fields was placed on paper tray status when he refused to relinquish his tray during trash and tray pick up.  DX A-1, p.55.

### B.     Flooding of Plaintiff's Cell on October 10, 2002

11.     On October 10, 2002, staff completed serving the SHU prisoners their evening meal and were in the process of collecting trash and trays.  DX A-1, p.56, 59.  Officers Ruiz and Wilbur arrived at Fields' cell and ordered him to return his tray.  DX A-1, p.59.  Fields would not relinquish his tray, complaining that his toilet was plugged up.  DX A-1, p. 59.  Fields then ordered staff to make an emergency call to the plumber.  DX A-1, p.59.  The officers told Fields that a work order had been submitted, but Fields continued to hold his tray.  DX A-1, p. 59.

12.     The officers notified Sergeant Fuhlrodt.  DX A-1, p. 59.  Sergeant Fuhlrodt states that when he arrived at plaintiff's cell he saw what appeared to be water on the floor, but he denies seeing solid matter.  DX A-1, p.71.  Officer Ruiz states that he cleaned the area outside of Fields' cell and instructed Fields on how to do the same using materials Fields had inside his cell.  DX A-1, p.71.  Fields still refused to give up his tray and Lieutenant Rabe was called.  DX C-1.

13.     At approximately 5:15 p.m., Lieutenant Rabe responded to Inmate Fields' cell.  DX C, ¶ 4.  After Fields complained about plumbing and staff, he returned his dinner tray to

1  Lieutenant Rabe. *Id*.

2        14.    Lieutenant Rabe contends that while listening to Fields, he scanned the

3  area and observed that the tier in front of Fields' cell was clean and clear of any water, staff

4  having already mopped and cleaned the area. DX C, ¶ 5. He also noted that the floor of Fields'

5  cell was clear of both debris and water and it appeared that Fields had cleaned it. *Id.*

6        15.    Because the areas appeared clean, Lieutenant Rabe made the decision not

7  to remove Fields from his cell, believing it unnecessary. DX C, ¶ 6. However, had he seen

8  debris on the floor, Lieutenant Rabe contends he would not have hesitated to remove Fields from

9  his cell. *Id.*

10        16.    Lieutenant Rabe contends that after ensuring that a work order to fix the

11  plumbing problem had been completed, he authorized the placement of Fields on paper tray

12  status as a precautionary measure to prevent this type of future disruptions by Fields. DX C, ¶ 7.

13        17.    Medical Technical Assistants made rounds on the tier which would have

14  given inmate Fields the opportunity to address any medical issues he may have had.

15        18.    A review of Fields' medical file shows that he did not seek medical

16  treatment for either headache or nausea on October 10, 2002. DX D-1. Fields' medical record

17  show that he did not seek medical treatment of any kind until October 30, 2002. DX D-1, p. 15.

18        19.    The administrative segregation log shows that Fields ate breakfast, lunch

19  and dinner on October 11, 2002. DX A-1, p.59.

20        20.    On October 11, 2002, Fields was placed on water restriction for flooding

21  the tier. DX A-1, p. 57.

22        21.    Fields refused to go out to yard on October 12, 2002 but did leave his cell

23  to shower. DX A-1, p. 59.

24        22.    On October 18, 2002, Fields again complained that his toilet was plugged

25  up. DX A-1, p. 60. Officer Canfield called the plumber. DX A-1, p.60. The plumber arrived at

26  2:00 p.m. and Fields' toilet was fixed by 2:30 p.m. DX A-1, p. 60.

27      **C.    Exhaustion of Administrative Remedies**

28        23.    On October 10, 2002, Fields filed a grievance complaining about his

6

1  overflowing toilet.  DX A-1, p.73.  He exhausted the grievance through the Director's level of

2  review on May 28, 2003.  DX A-1, p.80.

3          24.     On October 28, 2002, Fields filed a grievance claiming that for the period

4  beginning October 11, 2002, through November 10, 2002, since being placed on paper tray

5  status, he was shorted rations at dinner.  DX A-1, p.65.  Fields requested that all inmates on

6  paper tray status be interviewed, and that the departmental review board take action against

7  Warden Scribner, Captain Dill, Lieutenant Rabe, Sergeant Fuhlrodt and Officers Ruiz and

8  Wilbur.  DX A-1, p.65-66.

9          25.     Fields was interviewed by Sergeant Robinson on December 21, 2002.  DX

10 A-1, p.69.  During the interview, Fields stated he believed he had been shorted food on four

11 occasions.  DX A-1, p.69-70.  Fields also stated that he had been receiving his meals without

12 problem since November.  DX A-1, p.70.  Staff informed Sergeant Robinson that Fields received

13 the same rations as other inmates.  DX A-1, p.69-70.  Fields' allegations were determined to be

14 unfounded, and his appeal was denied at the first level of review.  DX A-1, pp.68, 70.

15         26.     Fields appealed to the second level of review on February 6, 2003,

16 however, the appeal was cancelled on March 13, 2003.  DX E (Declaration of V. Castillo), ¶ 5.

17 Fields did not appeal the denial of his grievance further and did not file the grievance at the

18 Director's level of review.  DX E, ¶ 5.

19              3.     Plaintiff's Eighth Amendment Claim

20         To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

21 conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v.

22 Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

23 prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

24 personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v.

25 Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from

26 unsafe conditions of confinement, prison officials may be held liable only if they acted with

27 "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124,

28 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."  Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  Id. at 844-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim."  Id. at 9 (citation omitted).  With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Id. (quotations and citations omitted).  The Eighth Amendment guarantees sanitation.  Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  "Subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995).

*Sufficiently Serious Condition*

Defendants submit evidence that on October 10, 2002, the toilet in plaintiff's cell overflowed and that the flooding was a result of plaintiff having plugged up his toilet.

Undisputed Fact (UF) Nos. 11-16, 20.   Officers contend they called the plumber and submitted a work order to fix the toilet.  UF No. 11.  Sergeant Fuhlrodt contends that when he arrived at plaintiff's cell, the area outside the cell was wet but he saw no solid matter.  UF 11, 12.  Officer Ruiz contends he cleaned the area outside the cell and instructed plaintiff how to do the same using materials inside his cell.  UF 12.  Lieutenant Rabe contends when he arrived at plaintiff's cell, the area was clean and he saw no debris on the floor.  UF 13-14.  The segregation log shows that plaintiff received all three meals in his cell the next day and two days later, he refused to go to the exercise yard.  UF 19-20.

Defendants argue that plaintiff was subjected to routine discomfort for a very short period of time and this brief inconvenience fails to meet the objective element of an Eighth Amendment violation.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).

In his opposition, plaintiff states that on October 10, 2002, he informed defendants Ruiz, Wilbur and Canfield that the plumbing in his cell was backing up, resulting in feces and urine in his cell from other cells on the tier.  Plaintiff's Declaration in Opposition to Motion for Summary Judgment ("Plaintiff's Opposition"), ¶ 2.  Plaintiff contends he informed the officers that the smell was causing him to have a severe headache and nausea.  Plaintiff's Opposition, ¶ 3.  Plaintiff contends that when defendant Fuhlrodt arrived at his cell, the contamination was still present.  Plaintiff's Opposition, ¶ 7.  Plaintiff also contends that when defendant Rabe arrived at

1  his cell, the feces, urine and contaminated water were still on his cell floor and he refused to call

2  a plumber.  Plaintiff's Opposition at ¶10.  Plaintiff contends that defendants did not submit a

3  work order until October 15, 2002 (Plaintiff's Opposition at ¶ 10) and that his toilet was in

4  disrepair for 29 days.  Opposition at ¶ 14.

5       Plaintiff has submitted evidence sufficient to create a disputed issue of fact concerning the

6  objective component of his Eighth Amendment claim.  It is undisputed that plaintiff's toilet was

7  in disrepair.  However, the parties dispute the length of time and the extent of the problem.  In this

8  Circuit, subjecting an inmate to confinement in a cell with a malfunctioning toilet for 29 days, as

9  described by plaintiff, is sufficient to meet the objective requirement of the Eighth Amendment

10  analysis.

11       *Defendants' State of Mind*

12       Defendants Ruiz, Wilbur, Canfield, Fuhlrodt and Rabe further argue that they were not

13  deliberately indifferent to plaintiff's needs.  Defendants argue that shortly after plaintiff

14  complained about his toilet, a plumber was called and a work order submitted.  UF 11.  Defendant

15  Ruiz contends that he cleaned the area outside of plaintiff's cell and instructed him how to clean

16  the inside of his cell.  UF 12.  Defendant Fuhlrodt and Rabe state that they did not see debris of

17  any kind on the floor of plaintiff's cell and therefore did not believe plaintiff was at risk.

18       As described above, plaintiff disputes defendants' version of the events that occurred on

19  October 10, 2002.  Plaintiff contends that a work order was not submitted until October 15, 2002,

20  five days after defendants were made aware of the condition.  Defendants' exhibit indicates a date

21  of October 15, 2002 and thus, it is not clear to the court when the order was actually submitted.

22  Plaintiff disputes that defendant Ruiz cleaned the area outside of his cell and he contends the

23  debris was still present when defendants Fuhlrodt and Rabe arrived.  Moreover, he contends that

24  defendants were not concerned about the debris and in fact refused to remove him from his cell so

25  that the area could be cleaned.

26       In prison condition cases under the Eighth Amendment, prison officials act with the

27  requisite culpable intent when they act with deliberate indifference to an inmates' suffering.

28  <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1313 (9th Cir. 1995).  Plaintiff has submitted evidence

sufficient to create a triable issue of fact with respect to the subjective component of the Eighth Amendment claim.

Because the evidence set forth by plaintiff is sufficient to create a triable issue of fact with respect to whether or not plaintiff was subjected to conditions of confinement in violation of the Eighth Amendment, the court shall recommend that defendants' motion for summary adjudication on plaintiff's Eighth Amendment claim be denied.

*Plaintiff's Injuries*

Defendants argue that plaintiff's alleged headache and nausea, were at most de miminis and thus insufficient to state a claim for relief under the Eighth Amendment.

The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630. Here, there is no indication that plaintiff is seeking compensatory damages for mental or emotional injuries and therefore defendants' argument is misplaced. There is a triable of issue of fact as to whether the conditions to which plaintiff was subjected were sufficiently serious under the Eighth Amendment analysis. An Eighth Amendment conditions of confinement claim does not require an allegation of injury that is more than de minimis. With respect to these types of claims, the issue is the nature of the deprivation, not the injury: "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."

4.    Plaintiff's Retaliation Claim

Defendants argue that plaintiff's retaliation claim against defendants Ruiz, Wilbur, Canfield and Fuhlrodt must be dismissed because he failed to exhaust his administrative remedies with regard to this claim prior to filing suit. Exhaustion motions are properly brought pursuant to

the unenumerated portion of Federal Rule of Civil Procedure 12(b), <u>Wyatt v. Terhune</u>, 315 F.3d

1108, 1119 (9th Cir. 2003).  The Court therefore construes this portion of defendants' motion as

an unenumerated 12(b) motion.

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."  42 U.S.C. § 1997e(a).  The section 1997e(a) exhaustion requirement

applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 435 U.S. 516, 532 (2002), and

requires prisoners to complete the prison's administrative process, regardless of the relief sought

by the prisoner and regardless of the relief offered by the process, as long as the administrative

process can provide some sort of relief on the complaint stated,[3] <u>Booth v. Churner</u>, 532 U.S. 731,

741 (2001).  "All 'available' remedies must now be exhausted; those remedies need not meet

federal standards, nor must they be 'plain, speedy, and effective.'"  <u>Porter</u>, 534 U.S. at 524 (citing

to <u>Booth</u>, 532 U.S. at 739 n.5).  "Proper exhaustion[, which] demands compliance with an

agency's deadlines and other critical procedural rules . . . ." is required, <u>Woodford v. Ngo</u>, 126

S.Ct. 2378, 2386 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally

defective . . . appeal," <u>id</u>. at 2382.  Finally, exhaustion must occur prior to filing suit.  <u>McKinney</u>

<u>v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative

defense under which defendants have the burden of raising and proving the absence of exhaustion.

<u>Wyatt</u>, 315 F.3d at 1119.  The failure to exhaust non-judicial administrative remedies that are not

jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment

motion.  <u>Id</u>. (citing <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368

---

[3] The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1.  The process is initiated by submitting a CDC Form 602.  <u>Id</u>. at § 3084.2(a).  Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level."  <u>Id</u>. at § 3084.5.  Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level.  <u>Id</u>. at §§ 3084.5, 3084.6(c).

1   (9th Cir. 1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust

2   administrative remedies, the Court may look beyond the pleadings and decide disputed issues of

3   fact.  Wyatt, 315 F.3d at 1119-20.  If the Court concludes that the prisoner has failed to exhaust

4   administrative remedies, the proper remedy is dismissal without prejudice.  Id.

5        Defendants present evidence, and plaintiff does not dispute, that he filed a grievance

6   against defendants Ruiz, Wilbur, Canfield and Fuhlrodt on October 28, 2002, alleging that they

7   were retaliating against him by withholding a portion of his dinner.  UF 24, Comp. P. 9, ¶ 41.

8   Plaintiff's appeal was denied at the first level of review on December 21, 2002.  UF 25.  Plaintiff

9   submitted the appeal to the second level of review where it was cancelled on March 13, 2003.  UF

10  26.  Plaintiff did not pursue the appeal to the Director's Level.  UF 26.

11       In opposition, plaintiff argues that on March 13, 2003, his appeal was assigned to an

12  unknown prison official with a due date of June 11, 2003.  Plaintiff appears to argue that since his

13  appeal was never answered, his administrative remedies were exhausted.  However, plaintiff

14  provides no evidence that he submitted the appeal to the Director's Level or even attempted to do

15  so.

16       "[Proper] exhaustion of administrative remedies is necessary," Woodford v. Ngo, 126

17  S.Ct. 2378, 2382 (2006), and "[p]roper exhaustion demands compliance with an agency's

18  deadlines and other critical procedural rules . . . ," id. at 2386.  The court is mindful that the

19  failure to respond to a properly filed grievance may result in a finding that exhaustion occurred.

20  Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the

21  remedy becomes unavailable, and exhaustion occurs); Foulk v. Charrier, 262 F.3d 687, 698 (8th

22  Cir. 2001) (district court did not err when it declined to dismiss claim for failure to exhaust where

23  prison failed to respond to grievance); see also Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir.

24  2005).  Here, however, plaintiff has not submitted any evidence demonstrating that he timely

25  pursued his appeal beyond the second level.  Although plaintiff does submit evidence that he

26  submitted his an appeal of the retaliation claim on October 28, 2002, that appeal was cancelled

27  and he failed to pursue the appeal to the Director's Level.  "Proper exhaustion[, which] demands

28  compliance with an agency's deadlines and other critical procedural rules . . . ." is required,

1    Woodford v. Ngo, 126 S.Ct. 2378, 2386 (2006), and may not be satisfied "by filing an untimely or

2    otherwise procedurally defective . . . appeal," id. at 2382.  Woodford, 126 S.Ct. at 2382.

3    Plaintiff's retaliation claim must therefor be dismissed without prejudice.

4        5.    Qualified Immunity.

5        Finally, defendants argue that to the extent the court finds plaintiff has stated a claim for

6    relief, they are entitled to qualified immunity from plaintiff's claims for damages.  Qualified

7    immunity shields government officials from civil damages unless their conduct violates "clearly

8    established statutory or constitutional rights of which a reasonable person would have known."

9    Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity,

10   the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the

11   facts alleged show the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533

12   U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask whether

13   the right was clearly established.  Id.  In determining whether the right was clearly established, the

14   inquiry "must be undertaken in light of the specific context of the case, not as a broad general

15   proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly

16   established' in a more particularized, and hence more relevant, sense:  The contours of the right

17   must be sufficiently clear that a reasonable official would understand that what he is doing

18   violates that right."  Id. at 202 (internal quotations and citation omitted).  In resolving these issues,

19   the Court must view the evidence in the light most favorable to Plaintiff and resolve all material

20   factual disputes in favor of Plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

21       As set forth in the preceding section of this order, there are disputed issues of material fact

22   regarding plaintiff's allegations that he was left in a cell with an overflowing toilet for 28 days in

23   violation of the Eighth Amendment.  Viewing the evidence in the light most favorable to plaintiff,

24   the conduct complained of violated the Eighth Amendment.  Lopez, 203 F.3d at 1132-33; Allen,

25   48 F.3d at 1086-88.

26       Turning to the second step in the analysis, in 2002, when the deprivation at issue began,

27   the law was clearly established that subjecting a prisoner to lack of sanitation that is severe or

28   prolonged can constitute an infliction of pain that violates the Eighth Amendment such that it

14

would have been reasonably clear to a reasonable officer that leaving an inmate in a cell with a non-functioning toilet for 28 days would violate his rights.  While defendants contend they contacted a plumber as soon as they were made aware of the condition and defendant Rabe contends that by the time he arrived and plaintiff's cell, there was no visible water or debris, plaintiff disputes defendants' version of the facts.  Finally, it was clearly established in 2002 that if Defendants knew of the violation and failed to take steps to prevent it, they could be held liable for the violation.  Cunningham, 229 F.3d at 1289; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In conclusion, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  By 2002, requiring an inmate to live in a cell with a malfunctioning toilet for 28 days constituted a knowing violation of the Eighth Amendment.  Lopez at 1133; Allen at 1088.  Accordingly, Defendants are not entitled to judgment as a matter of law based on qualified immunity.

D.      Conclusion

The court finds that there are disputed issues of material fact precluding summary judgment on plaintiff's Eighth Amendment claim and defendants are not entitled to qualified immunity.  The court also finds that plaintiff failed to exhaust the administrative remedies with regard to his retaliation claim and therefore this claim must be dismissed without prejudice. Based on the foregoing, it is HEREBY RECOMMENDED that plaintiff's motion for voluntary dismissal of defendants Robertson and Dill, filed April 11, 2007 be GRANTED; defendants' motion for summary judgment, filed December 21, 2006 be GRANTED IN PART as described herein; and this case proceed to trial on plaintiff's Eighth Amendment claims against defendants Ruiz, Wilbur, Canfield, Fuhlrodt and Rabe.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  On or before July 25, 2007, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the

1  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2

3       IT IS SO ORDERED.

4       **Dated:**   **June 22, 2007**                      **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28